160 So.2d 854 (1964)
Mrs. Estelle BACHARACH, Wife of Eugene A. CHRETIEN
v.
F. W. WOOLWORTH COMPANY and the Travelers Insurance Company.
No. 1306.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
Rehearing Denied March 2, 1964.
*855 Frederick P. Heisler, New Orleans, for plaintiff and appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre and Charles W. Lane, III, New Orleans, for defendants and appellants.
Before McBRIDE, REGAN and YARRUT, JJ.
McBRIDE, Judge.
Defendants (a storekeeper and its liability insurer) appeal from a judgment in plaintiff's favor for $500 as damages she sustained because of an incident which occurred on August 16, 1958, while plaintiff was a customer in the F. W. Woolworth self-service store in Gretna, Louisiana. Plaintiff alleged in her petition that the manager of the establishment falsely charged her with having merchandise belonging to the store in her purse for which she did not intend to pay, which was tantamount to an accusation of theft, and that he refused to allow her to leave the premises until she had emptied the contents of her purse on the counter in full view of other customers and the employees in the store. The defense is that the manager acted with probable cause and his actions were completely justified on the basis of a reasonable belief; further, defendants aver that the actions the store manager took are specifically authorized by law and cannot be the predicate of a claim for damages by plaintiff under LSA-R.S. 15:84.5.
The facts are: The manager was informed by another customer that plaintiff had secreted certain merchandise in her translucent plastic handbag. He approached plaintiff, who was then in the stationery department, and endeavored to persuade her to use a shopping basket furnished by the store to carry purchased merchandise which she refused. The manager observed that plaintiff's handbag contained certain articles similar to some offered for sale in the store, so he continued to watch her. About ten minutes later, after she had passed through the check-out line and had paid for her purchases, the manager again accosted her and in a normal voice used language indicating plaintiff had some articles in her handbag for which she had not paid. Plaintiff thereupon opened her handbag and dumped the contents thereof on the counter. The manager at once observed that none of the store's merchandise was among the contents and apologized. The incident consumed but a few minutes.
Plaintiff testified:
"He asked me if I had paid for all the merchandise and I told him, `Yes, I paid for everything.' He said, `Are you sure you paid for all of your merchandise?' I said, `Yes, sir, I am.' He said, `Wouldn't you like to pay for the merchandise that you have in your handbag?' I said, `I have nothing but my own personal belongings in my handbag.' He said, `Are you sure you have paid for everything?' And at that time I was all excited and I *856 dumped my handbag out on the counter, and he separated it apart as he went ahead." (Italics ours.)
The incident happened on a Saturday afternoon when there were a number of persons (including her three minor children, her sister and an in-law) standing about the five check-out lines, possibly thirty or forty of them, and there is no question some of these witnessed the incident and heard the conversation between the manager and plaintiff. She stated she was upset, mortified, embarrassed, and was made to feel ashamed as a result of the manager's words and actions. She was nervous and could not drive her automobile home and summoned her husband for that purpose, although it appears that after the manager's apology she accompanied him to the office for a refund on the merchandise she had bought as she did not desire to do business with the store. She claims that the affair had such an ill effect on her nervous system that she had to take to her bed for a week; however, she admits she did not receive medical treatment. Plaintiff, then a housewife, is now employed by the St. Tammany Parish School Board. There is no evidence that her reputation was damaged or that she suffered anything but mental anguish and injury to her feelings.
The words used by the manager were opprobrious and of an accusative nature. The entire incident suffered by plaintiff, taken as a whole, was slanderous. The import of the statements was that plaintiff was endeavoring to steal the firm's merchandise. We do not agree with the defense that the manager had probable cause to believe plaintiff a thief, and merely because a stranger, whom he could not identify, had informed him that plaintiff was pilfering merchandise was not justification for his subsequent actions. Perhaps the manager had reasonable grounds for being suspicious of plaintiff; however, in carrying out the duty he owed his employer of protecting it from theft, he likewise owed a duty to plaintiffthat of not taking the precipitate course he pursued. Public accusations reflecting upon another person's honesty must be based upon something more substantial than information furnished by a mere stranger. See Banks v. Food Town, Inc., La.App., 98 So.2d 719. A storekeeper may not with impunity accuse a person of theft. Lorentz v. Thiesen, 140 La. 663, 73 So. 717; Delambre v. Kyes, 136 La. 686, 67 So. 552; Sanders v. W. T. Grant Co., La.App., 55 So.2d 89. Accusatory actions as well as specific charges of shoplifting may be slanderous. Sanders v. W. T. Grant Co., supra.
The contention is that the provisions of LSA-R.S. 15:84.5 clothed the storekeeper with a qualified privilege affording immunity from a civil action for damages. LSA-R.S. 15:84.5 protects a merchant, or his specially authorized employee, from criminal or civil responsibility when reasonable force only is used in detaining for questioning for a length of time not to exceed sixty minutes on the merchant's premises any person whom he had reasonable ground to believe was committing theft of goods displayed for sale by the merchant.
The store manager may have had a perfect right to question plaintiff whom he suspected of shoplifting, but the rights and qualified privilege granted by the statute do not clothe the storekeeper with immunity when its manager resorted to slander. The accusation of theft against plaintiff made in the presence of other persons was at the risk of the storekeeper if the suspicion of shoplifting proved baseless.
No special damages were proven by plaintiff and her only injury was the mortification, embarrassment and injury to her feelings which she experienced as a result of the affair.
No special damages need be proved. The actual pecuniary damages in an action for libel can rarely be shown and are never the sole rule of assessment. Mental *857 suffering alone can be made the basis for damages without calculating altogether on pecuniary loss or privation of pecuniary gain to the party. Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222; Jozsa v. Moroney, 125 La. 813, 51 So. 908, 27 L.R.A.,N.S., 1041. The law presumes malice upon the one hand and injury upon the other when slanderous words are used. Lorentz v. Thiesen, supra; Delambre v. Kyes, supra.
The manager's apology does not operate a release from responsibility and can only be considered in estimating the amount of damages. Williams v. McManus, 38 La.Ann. 161; Perret v. New Orleans Times Newspaper, 25 La.Ann. 170.
The trial court awarded plaintiff $500. We think the judgment does substantial justice between the parties even after making due allowance for the apology of the manager pleaded in mitigation, and no revision thereof either way is warranted.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.