219 So.2d 516 (1969)
Mary EASON, Plaintiff-Appellant,
v.
J. WEINGARTEN, INC., et al., Defendants-Appellees.
No. 2579.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1969.
Francis E. Mire, Lake Charles, for plaintiff-appellant.
Plauché & Plauche, by Allen L. Smith, Jr., Lake Charles, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Mary Eason, instituted this action for the damages which she allegedly sustained as the result of defamatory remarks made to and about her by one of the defendants. The suit was instituted against J. Weingarten, Inc., and its employee, Dudley Cummings. Judgment on the merits was rendered by the trial court in favor of defendants, and plaintiff has appealed.
The remarks which allegedly caused plaintiff to suffer damages were made on September 13, 1967, in a grocery store *517 owned by J. Weingarten, Inc., and located in the City of Lake Charles. The remarks were made by defendant Cummings, who at that time was employed by Weingarten as manager of the store in which this incident occurred.
Plaintiff and her daughter, Mrs. Jo Ann Borel, were shopping for groceries in defendant's store during the noon hour on that date. Each had obtained and was using a grocery basket or cart as she went through the store. Mrs. Borel had her 16 month child with her, and the child was seated in one of the carts on a seat made especially for carrying children.
Shortly after plaintiff and Mrs. Borel began shopping, plaintiff picked up some seedless grapes from the produce counter and she gave these grapes to the child who proceeded to eat them as plaintiff did her shopping. Mrs. Borel picked up two bags of potato chips, and she and plaintiff ate these potato chips as they went through the store.
The manager of the store, Cummings, saw plaintiff pick up the grapes from the counter and give them to the baby, and he saw plaintiff and Mrs. Borel eating the potato chips while they were shopping. He decided to keep an eye on the parties because he feared that they might not pay for the items which were being consumed in the store. He testified that a few minutes later plaintiff picked up a bottle of "Loving Care," a hair dye preparation, from the drug counter, and that he saw her open her purse, put the Loving Care in it and then close the purse and put it back in that part of the grocery cart which is used as a baby seat. Plaintiff acknowledges that she picked up a bottle of Loving Care at the drug counter and that she put it next to her purse on the baby seat in the cart, but she denies that she opened her purse or put the bottle in it.
When defendant Cummings saw, or thought he saw, plaintiff put the LovingCare in her purse he asked another employee, Joy Duplechain, to watch her, and he and this other employee then observed most of plaintiff's actions while she was in the building. Shortly thereafter, while plaintiff was in another part of the store, she took the bottle of Loving Care out of her purse or out of the cart and put it on a shelf in the store which was located some distance from the drug counter. Neither Cummings nor Joy Duplechain saw her return the bottle to the shelf. Plaintiff did not have the Loving Care in her possession when she checked out of the store and paid her bill, and of course she did not pay for it. She also did not pay for the grapes which the baby had eaten while plaintiff was doing her shopping. Cummings and Joy Duplechain were near the cash register when plaintiff paid her bill, and they determined that she had not paid for these items.
As plaintiff's groceries were being put in her car, and while she was on the sidewalk in front of the store, she was approached by Cummings and Joy Duplechain and was asked by Cummings to return to the store because he would like to talk to her. Plaintiff quoted Cummings as saying, "Hey lady, would you mind coming in the store. I would like to talk to you." Plaintiff readily consented, and she and Mrs. Borel then followed Cummings and Joy Duplechain into the store. Cummings then led them to a private room near the front of the store, which room was used for wrapping pastry products, and all of them except Mrs. Borel entered this room.
While in that private room, Cummings asked plaintiff to open her purse, and she immediately complied with that request. Noting that the bottle of Loving Care was not in the purse, Cummings asked plaintiff what she had done with it, and she told him that she had put it on another shelf in the store. Cummings and Joy Duplechain then left the room, followed by plaintiff, and plaintiff pointed out to them the bottle of Loving Care which she had left on a shelf in the department where washing powder and detergents are kept. While they were in the main part of the *518 store plaintiff asked Cummings, "What is the idea of you accusing me of taking the Loving Care? I ought to call the law." Cummings offered to call the law for her, which offer apparently was not accepted, and he stated that they were even since the baby had eaten some grapes which had not been paid for. Plaintiff thereupon acknowledged that she had taken the grapes and she offered to pay for them at that time, stating that it had never dawned on her that they were doing the wrong thing.
Shortly after this incident occurred, plaintiff attempted to return the groceries which she had bought, but Cummings refused to take them back or to give her a refund. After consulting a lawyer, plaintiff then picked up her groceries and left the store. This suit was then filed.
Plaintiff does not allege that she was unlawfully detained. She contends that the remarks made to her by Cummings were defamatory in that they amounted to an accusation that she had committed a theft. She contends that the accusation was false, that it was made in the presence of her daughter, Mrs. Borel, that other customers in the store "could see what was going on" and that she was embarrassed and humiliated by the actions and remarks of Cummings.
Defendants contend that the acts of and remarks made by Cummings were reasonable under the circumstances, that plaintiff was not detained against her will, that she voluntarily returned to the store and opened her purse, that none of the conversation between plaintiff and Cummings was overheard by anyone except the parties themselves and by Joy Duplechain and Mrs. Borel, that Cummings' remarks amounted to no more than a discreet inquiry which he had a right to make, and that plaintiff was not subjected to any embarrassment or humiliation. Alternatively, defendants contend that the conduct of Cummings was privileged and therefore subject to the immunity granted by Article 215 of the Louisiana Code of Criminal Procedure.
The trial judge concluded that plaintiff had not been detained against her will, that the actions and remarks of Cummings constituted a simple inquiry which was reasonable under the circumstances, and that plaintiff thus is not entitled to recover. In his reasons for judgment the trial judge said:
"The Court finds that what transpired in this case was a simple inquiry made by Mr. Cummings, which inquiry was certainly reasonable in light of what he saw the plaintiff do with the bottle of Loving Care while she was shopping in the store. There was no force used on the plaintiff. Every action of the plaintiff, from the time of the request to return to the store through the opening of her purse, was voluntary on her part. She was not detained against her will."
We agree with the trial judge that plaintiff was not detained against her will, and that her right to privacy was not violated. See Banks v. Food Town, 98 So. 2d 719 (La.App.1st Cir. 1957); Coates v. Schwegmann Bros. Giant Super Markets, Inc., 152 So.2d 865 (La.App.4th Cir. 1963). The question remains, however, as to whether the statements made by Cummings to and about plaintiff were defamatory, and if so, whether defendants are liable to plaintiff for the damages she may have sustained as a result of those remarks.
Although Cummings did not specifically accuse plaintiff of committing theft, we think his request that she open her purse and his subsequent inquiry as to what she had done with the bottle of Loving Care constituted an accusation that she had committed that offense. Such an accusation, whether true or false, ordinarily would cause the accused person to be embarrassed and humiliated. In this instance the accusation was false and defamatory, and plaintiff would be entitled to recover from defendants unless it is shown that the inquiries made by Cummings were reasonable and whether Cummings was justified in making them in the *519 light of the prior activities of the plaintiff. Simmons v. J. C. Penney Company, 186 So.2d 358 (La.App. 1st Cir. 1966).
The applicable rule, we think, is set out in 32 Am.Jur.2d, False Imprisonment, Section 74, at p. 134, as follows:
"Ordinarily the owner of property, in the exercise of his inherent right to protect it, is justified in restraining another who seeks to interfere with or injure it where the restraint or detention is reasonable in time and manner. Thus, where a person has reasonable grounds to believe that another is taking his property, he is justified in detaining the suspect for a reasonable length of time for the purpose of making an investigation in a reasonable manner. In such cases, probable cause is a defense, even though the injury which is about to be inflicted constitutes only a misdemeanor, for it is the existence of a reasonable ground to suppose that one's property is in danger which gives right to the protection. It follows that the owner of a store or other premises has a right to detain a customer or patron, for a reasonable time for a reasonable investigation, whom he has reasonable grounds to believe has not paid for what he has received, or is attempting to take goods without payment."
In Simmons v. J. C. Penney Company, supra, the plaintiff ran her hand across some brushes on a counter in the store, and then she suddenly raised her hand, pulled her overcoat tightly around her and walked out of the store. The manager observed her actions and, believing that she was a shoplifter, he stopped her on the sidewalk in front of the store and told her that he thought she had a brush under her coat. Plaintiff became offended at the accusation, and several people heard the discussion which followed. The plaintiff's demands for damages were rejected because the court found that the actions of the store manager were reasonable under the circumstances. The court said:
"We believe that clearly Mrs. Simmons' actions form the basis for a reasonable belief on the part of Mr. Brock that she had committed a theft."
"In addition, while the actions of Mr. Brock might technically be classified as a detention of Mrs. Simmons for purposes of questioning, we do not believe that this is the type of situation envisioned by the statute [LSA-R.S. 15:84.5 and 84.6; now LSA-C.C.P. art. 215], but rather was a simple inquiry made by Mr. Brock, which inquiry was reasonable in the light of the prior actions of the plaintiff."
The facts in Banks v. Food Town, supra, were more favorable to a claim for damages than are the facts in the instant suit, and yet plaintiff's demands were rejected. There, an employee of the storekeeper accosted and searched a suspected shoplifter in the presence of other customers. In rejecting plaintiff's claim for damages, the court noted that the plaintiff had consented to the detention and search, and it held that the employee had acted in good faith pursuant to a legal and moral duty, that his actions were reasonable under the circumstances and that defendant was protected from liability by a "qualified privilege."
Some of the other authorities which we have considered and which we think are pertinent in determining the issues presented here are: Collyer v. S. H. Kress Co., 5 Cal.2d 175, 54 P.2d 20 (1936); Rothstein v. Jackson's of Coral Cables, Inc., 133 So.2d 331 (Fla.App., 1961); Wilde v. Schwegmann Bros. Giant Supermarkets, Inc., 160 So.2d 839 (La.App. 4th Cir. 1964); Chretien v. F. W. Woolworth Company, 160 So.2d 854 (La.App.4th Cir. 1964); Sanders v. W. T. Grant Co., 55 So.2d 89 (La.App. 1st Cir. 1951); Coates v. Schwegmann Bros. Giant Super Markets, Inc., supra; Girlinghouse v. Zwahlen, 3 La.App. 720 (1926); 6 L.L.R. 281-285; 6 L.L.R. 417-424; 25 L.L.R. 956-965; 28 L.L.R. 82-109.
*520 In the instant suit we think Cummings had reasonable grounds to believe that plaintiff was taking the bottle of Loving Care without paying for it, and that he had probable cause to detain her for a reasonable length of time for the purpose of making an investigation. We have held that there was no detention here, since plaintiff voluntarily returned to the store and opened her purse, but Cummings' right to detain plaintiff included the right to inquire and investigate whether she had taken the item of merchandise which she had removed from the shelf and had not paid for. The evidence convinces us that Cummings' actions were reasonable under the existing circumstances. He exercised considerable care in preventing anyone else from overhearing the conversation which he had with plaintiff, and in protecting plaintiff from embarrassment. The entire investigation required only a minimal amount of time and we think it was conducted in a reasonable manner. Under those circumstances we agree with the trial court's conclusion that plaintiff is not entitled to recover from defendants.
Plaintiff relies largely on the cases of Wilde v. Schwegmann Bros. Giant Supermarkets, Inc., supra, and Chretien v. Woolworth Company, supra, in both of which cases the plaintiff was allowed to recover. The facts in each of those cases differ so materially from the facts in the instant suit, however, that we do not consider the holding in either of those cases as being controlling here. In the Wilde case, for instance, the court found that there were no reasonable grounds upon which to suspect plaintiff of shoplifting, that she was detained and held incommunicado in a very small windowless room for an unreasonably long period of time, and that she was intimidated into signing a confession without reasonable effort made by the storekeeper to find the true facts. In the Chretien case, supra, the court found that the manager of the store did not have probable cause to believe plaintiff a thief, since the only basis he had for making such a public accusation was on information furnished by a stranger whom he could not identify. The court held that "Public accusations reflecting upon another person's honesty must be based upon something more substantial than information furnished by a mere stranger." (160 So.2d 856). In the instant suit, unlike the facts in either of the cited cases, the storekeeper had reasonable grounds on which to suspect the plaintiff, and the investigation was conducted in a reasonable manner.
It is not necessary for us to consider the alternate plea of defendants that they are protected from liability by the provisions of Article 215 of the Louisiana Code of Criminal Procedure, since we have concluded that there was no detention here, and that defendants are not liable even without considering the protection provided by that article.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.